UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA M. L.[1], an Individual,<br><br>           Plaintiff,<br><br>           v.<br><br>FRANK BISIGNANO[2], Commissioner of Social Security,<br><br>           Defendant. | Case No.: 2:24-07643 ADS<br><br>MEMORANDUM OPINION AND ORDER |

## I.    INTRODUCTION

Plaintiff ("Plaintiff") challenges Defendant Frank Bisignano, Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became Commissioner of Social Security on May 7, 2025. Under Federal Rule of Civil Procedure 25(d), she is automatically substituted for Martin O'Malley as Defendant in this suit.

supplemental security income ("SSI") under Title XVI of the Social Security Act. Plaintiff contends that the Administrative Law Judge's ("ALJ") decision was not supported by substantial evidence and that the ALJ erred in evaluating Plaintiff's symptom testimony and erred in the determination of Plaintiff's residual functional capacity ("RFC") (Docket ("Dkt.") No. 15, Plaintiff's Brief ("Pl. Br.").) For the reasons stated below, the ALJ's decision is reversed, and the case is remanded for further proceedings consistent with the opinion below.

## II. FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain facts relevant to this appeal. Plaintiff has a ninth-grade education. (Dkt. No. 11, Administrative Record ("AR") 2895.) Plaintiff has previous work experience as a nurse assistant, working in a nursing home. (AR 50, 2880.) Plaintiff alleges disability due to spinal degeneration, degeneration of the knees, shoulders and hands, fibromyalgia and migraines. (AR 2874.)

In January 2014, Plaintiff suffered an injury to the spine at work. (AR 998.) Plaintiff was diagnosed with lumbar spine myofascitis with radicular pain (AR 1009). Plaintiff was diagnosed with fibromyalgia in 2016. (AR 456-8.)

Between at least 2016 and 2019, Plaintiff was seen by medical providers for migraine headaches (AR 300-3, 377-8, 382-3, 407-8, 447-9). Plaintiff was noted to have chronic relapsing headaches with tingling in the face, twitching of the left eye and blurred vision. (AR 383). Plaintiff received injections for occipital nerve blocks and Toradol for the migraine pain. (AR 382-3, 408, 426.) Plaintiff continued to have visual disturbance, nausea, light sensitivity, noise sensitivity and vomiting. (AR 447-8, 450). In 2016, Plaintiff's MRI was normal. (AR 449).

In 2016, Plaintiff was seen for multiple trigger fingers, left long and ring fingers. (AR 427-8, 431). Plaintiff underwent multiple surgeries for her trigger fingers. (AR 343-4, 348-9.) Plaintiff continued to experience pain and tenderness in her hands. (AR 2118.)

At the first hearing before an ALJ, on September 29, 2020, Plaintiff testified that she suffers from migraine headaches requiring injections. (AR 50, 53.) Plaintiff described problems with her left hand, and that both of her hands are weak and swollen with pain. (AR 50.) At the second hearing before an ALJ, on April 18, 2024, among other things, Plaintiff testified that she suffered from migraine headaches, fibromyalgia pain, hand problems, and knee problems. (AR 2899, 2903, 2904, 2907.)

Plaintiff testified that in January 2023, she began working full time as a companion for a woman with chronic physical disabilities. (AR 2870.) In that job, Plaintiff accompanies the woman and participates in activities with her. (Id.)

### III. PROCEEDINGS BELOW

#### A. Procedural History

On August 8, 2018, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (AR 21.) On August 9, 2018, Plaintiff also filed a Title XVI application for supplemental security income. (Id.) In both applications, the claimant alleged disability beginning May 31, 2014. (Id.) Plaintiff's claims were denied initially on October 23, 2018, and upon reconsideration on March 8, 2019. (Id.) Plaintiff filed a written request for a hearing on May 8, 2019. (Id.) The ALJ held a telephonic hearing on September 29, 2020. (Id.) On December 1, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled. (AR 33.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied

Plaintiff's request for review on December 1, 2020. (AR 1.) Plaintiff then filed an action in District Court on September 21, 2021. Ana Maria Lopez v. Kilolo Kijakazi, Case No: 2:21-cv-07559-ADS (C.D. Cal. Sep. 21, 2021). Based upon the parties' stipulation, the Court remanded the case for further proceedings before the ALJ. (Id. at Dkt. 26.)

The ALJ held a telephone hearing on April 18, 2024. (AR 2892.) Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert. (Id. at 2893.) On May 8, 2024, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (AR 2883.) Plaintiff then filed this action in District Court on September 6, 2024, challenging the ALJ's decision. (Dkt. No. 1.) The case is ready for decision.[3]

**B.     Summary of ALJ Decision After Hearing**

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements for DIB through December 31, 2020. (AR 2868.)

In the decision (AR 2867–83), the ALJ followed the required five-step sequential evaluation process under the Social Security Act to assess whether Plaintiff was disabled.[4] See 20 C.F.R. § 404.1520(a). At **step one**, the ALJ found that Plaintiff had

---

[3] The parties filed consents to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. (Dkt. Nos. 9-10.)
[4] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (as amended).

engaged in substantial gainful activity during the period of January 2023 to December 2023.  (AR 2870.)  The ALJ also found that there have been continuous 12-month periods during which claimant did not engage in substantial gainful activity and stated that the rest of the findings are limited to those periods, without explicitly identifying those periods.  At **step two**, the ALJ found that Plaintiff had the following severe impairments:  degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the knees with meniscus repair; degenerative joint disease of the shoulders with arthroscopic surgery; trigger fingers and de Quervain's tenosynovitis of the hands; fibromyalgia; and migraine headaches (AR 2871.)  At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  (AR 2873.)

The ALJ then found that Plaintiff had the RFC[5] to perform to perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except as follows:

> She needs an opportunity to change positions as often as every thirty minutes for one to two minutes. The claimant is precluded from any ladder, rope, and scaffold climbing, all crawling tasks, and all dangerous work hazards exposure. The claimant is limited to performing the remaining postural motions occasionally. With the bilateral upper extremities, the claimant is limited to occasional overhead reaching tasks, and is limited to frequent, but not constant, forward reaching, handling, and fingering tasks. She is limited to having occasional exposure to extreme heat, humidity, and cold conditions. The claimant is limited to performing up to detailed, but not complex, work tasks, work not requiring a production quota pace (ie assembly line environment where one's work impacts work down the line), and work allowing the claimant to be off task up to three percent of a workday due to momentary symptom distractions.

---

[5] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

(AR 2874.)

At **step four**, the ALJ found Plaintiff has been unable to perform any past relevant work. (AR 2880.) At **step five**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as router, counter attendant, storage facility rental clerk, and small products assembler. (AR 2881.) Accordingly, the ALJ determined that Plaintiff was not disabled from May 31, 2014, through the date of the decision, May 8, 2024. (AR 2882–83.)

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises the following issues for review: (1) whether the ALJ's decision was supported by substantial evidence; (2) whether the ALJ erred in evaluating Plaintiff's symptom testimony and (3) whether the ALJ erred in her determination of the RFC. (Pl. Br., Dkt. No. 15 at 17, 18, 27.)

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). An

ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "'inconsequential to the ultimate nondisability determination,'" or if "'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012), superseded by regulation on other grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021).

**C.     The ALJ's Decision is Not Supported by Substantial Evidence**

Plaintiff argues generally that the ALJ's decision is not supported by substantial evidence and contains legal error. (Pl. Br. at 18.) More specifically, Plaintiff argues that the ALJ erred in evaluating and discounting Plaintiff's symptom testimony and in developing the RFC. In opposition, Defendant argues that the ALJ's decision is supported by substantial evidence. Defendant contends that the ALJ properly considered Plaintiff's work, daily activities and treatment noncompliance as inconsistent with Plaintiff's subjective complaints. (Def. Br., Dkt. No. 19 at 4–6.) According to Defendant, the ALJ properly evaluated Plaintiff's RFC because she did not have a duty to incorporate unsupported limitations into the RFC. (Def. Br. at 9–10.)

The Court finds generally that ALJ's decision is lacking sufficient clarity regarding the relevant time period assessed, which hinders the Court's ability to provide meaningful review. An ALJ must set forth the reasoning behind her decisions in a way that "allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations". Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)). Here, the ALJ's decision has not met this bar.

The ALJ's opinion fails to clearly explain its reasoning for finding that Plaintiff was not disabled for the entire ten-year period described in the opinion. Plaintiff alleged a disability onset date of May 31, 2014. (AR 2867.) The ALJ found Plaintiff's date last insured was December 31, 2020. (AR 1867, 2869.) Therefore, to obtain disability benefits, Plaintiff must demonstrate that she was disabled prior to her last insured date. See Armstrong v. Commissioner of the SSA, 160 F.3d 587, 589 (9th Cir.

1998) (citing 42 U.S.C. § 423(c)). The ALJ's May 8, 2024 opinion found Plaintiff not disabled from May 2014 through the date of the opinion. The ALJ's decision states that there have been "continuous 12-month periods during which the claimant did not engage in substantial gainful activity" and that the ALJ's remaining findings "address the periods the claimant did not engaged in substantial gainful activity." (AR 2869.) The decision does not further specify the periods it addresses.

The parties do not clarify in their briefing which time period(s) they are arguing about either. Plaintiff argues the ALJ improperly relied on evidence from 2023 to discredit evidence from much earlier in the relevant period. (Pl. Br. at 19, 24–23, 25.) Defendant argues the ALJ properly evaluated the evidence. (Def. Br. at 6.) However, a review of the ALJ's decision reflects that the ALJ never explained how evidence from later in the time period examined, such as 2022–2023, properly discounts evidence from much earlier in the time period, such as 2014–2017. This hinders the Court's review of the issues because Plaintiff's symptoms may have waxed and waned at times between 2014 and 2023. (Pl. Br. at 19.) However, temporary improvement does not preclude the possibility that Plaintiff was "was disabled for a qualifying portion of the time from [her] alleged onset date, even if not for the full period." See Smith v. Kijakazi, 14 F.4th 1108, 1114 (9th Cir. 2021) (holding the ALJ erred in rejecting claimant's testimony wholesale without explaining how her rationale for finding the late-period testimony not credible applied to the early-period testimony).

The ALJ concluded that Plaintiff was not disabled from May 31, 2014, through May 8, 2024. (AR 2882–83.) Besides the period from January 2023 to December 2023, when the ALJ found Plaintiff had been engaged in substantial gainful activity, the conclusion that Plaintiff was not under a disability for the rest of the time, is not

supported by substantial evidence.

**D.     The ALJ's Evaluation of Plaintiff's Testimony**

Plaintiff argues that the ALJ erred in evaluating and discounting Plaintiff's symptom testimony. Specifically, Plaintiff asserts that the ALJ erred by citing normal findings to discount the severity of Plaintiff's complaints regarding her fibromyalgia, knee pain, shoulder degeneration with tear, neck pain, back pain, hand arthritis with trigger fingers and migraines. (Pl. Br. 18, 20, 21, 24, 25.)  Plaintiff argues that the ALJ erred by failing to look at the record as whole when evaluating Plaintiff's symptom testimony.  (Id. at 23, 25.)  Plaintiff reiterates her interpretation of the medical records before the ALJ.  (Id. at 16–17.)  In opposition, Defendant argues that the ALJ properly considered Plaintiff's work, daily activities and treatment noncompliance as inconsistent with Plaintiff's subjective complaints.  (Def. Br., Dkt. No. 19 at 4–6.)

1.     Legal Standard for Evaluating Plaintiff's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.  See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain.  See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) ("an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (same).

If the claimant provides objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of

malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Benton, 331 F.3d at 1040 (explaining that after a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaints "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."); see also Social Security Ruling ("SSR") 16-3p (findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms").

The ALJ may consider a number of factors when weighing the claimant's credibility, including: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he or she complains. See Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas, 278 F.3d at 959 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)).

### 2. The ALJ Erred in Discounting Plaintiff's Symptom Testimony

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's testimony was not entirely consistent with the medical evidence and other evidence in the record. (AR 2875.) The ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence for discounting some of Plaintiff's symptom testimony. Specifically, the ALJ failed to explain how later evidence discounts evidence from earlier years, including substantially earlier years.

For example, in discounting Plaintiff's testimony regarding knee symptoms, the ALJ states that Plaintiff underwent knee surgery in 2016 and "examinations have not indicated limitations consistent with the claimant's allegations since that time." (AR 2876.)

> While the claimant's gait was characterized as slow in August 2018, providers stated it was normal in September 2018 (Exhibit 2F/ 8, 12). Evaluation in October 2018 showed no findings of a limp, and the claimant additionally had a normal gait and posture in October 2020 (Exhibit 4F/ 26; Exhibit 12F/ 225). While the claimant had some knee crepitus in October 2018, the claimant did not exhibit tenderness to either knee (Exhibit 4F/ 26). The record does suggest some subsequent worsening of knee pain with observations of bilateral tenderness in May 2023, as well as imaging showing a subtle meniscus tear in the left knee (Exhibit 11F/ 32; Exhibit 12F/ 721). Nonetheless, the claimant continued to have good range of motion and stability in July 2023 and November 2023, and walked without a limp in November 2023 (Exhibit 12F/ 796, 873). Because the evidence does indicate a period of significant limitations due to meniscus tear in the right knee, but the claimant has generally demonstrated good knee mobility and intact gait since knee surgery, the undersigned does not find these allegations fully supported.

(AR 2876.) The ALJ does not explain how medical evidence from 2018 and 2023 speaks to the Plaintiff's allegations regarding knee pain between 2014 and 2017. Therefore, the ALJ's the ALJ's discounting of Plaintiff's symptom testimony regarding

her knee condition is not supported by substantial evidence.

In another example, the ALJ used evidence from 2020 and later to discount allegations of shoulder limitations from the entire prior period. Regarding Plaintiff's shoulder, the ALJ acknowledged Plaintiff's reduced strength, flexion and abduction in 2017; impingement, diminished range of motion and tenderness in 2017; and imaging from 2018 establishing a history of tendinosis and acromioclavicular arthritis in the right shoulder. (AR 2876.) To discount this evidence the ALJ stated, "[h]owever, the claimant had recovered full active range of motion and full strength despite some pain and minimal crepitus in January 2020", noting that Plaintiff had a shoulder surgery in 2018. (Id.) The ALJ further states,

> Nevertheless, the claimant had well-preserved range of motion and strength despite pain in April 2023 and July 2023, inconsistent with serious worsening in that shoulder (Exhibit 12F/ 544, 705). Accordingly, because the claimant's range of motion and strength in the right shoulder improved with surgery, and the claimant has not displayed similar impairment in the left shoulder despite new evidence of arthritis and tendinosis, the undersigned finds these allegations partially supported.

(AR 2876.) The ALJ provided no explanation for how evidence from 2020 and 2023 discounted allegations and evidence from as early as 2014. Therefore, the ALJ's discounting of Plaintiff's symptom testimony regarding her shoulder condition is not supported by substantial evidence.

In yet another example, the ALJ similarly used late period evidence to discount earlier period evidence regarding Plaintiff's migraines without explanation. The decision states,

> However, the medical evidence does not consistently indicate distress commensurate with her pain complaints, with the claimant exhibiting only

> mild distress in January 2023 despite reports of severe had pain (Exhibit 11F/ 3). Likewise, despite seeking treatment for a headache in February 2018, she had conceded that she was not in severe pain (Exhibit 2F/ 44-45). Moreover, the claimant had normal cranial nerves in November 2016 and no apparent neurological deficits in September 2022 despite complaints of facial tingling (Exhibit 2F/ 113; Exhibit 12F/ 586-88). Additionally, while the claimant has received injections including occipital nerve blocks for these headaches, the claimant had reported sustained relief lasting more than three months at a time, inconsistent with the persistence and frequency of headaches that the claimant alleges (Exhibit 2F/ 45, 108; Exhibit 8F/ 481).

(AR 2877.) The evidence cited regarding Plaintiff receiving occipital nerve blocks was from 2018 and 2019. (AR 379, AR 1067.) Again, the ALJ provided no explanation for how evidence from 2018, 2019, 2022 and 2023 discounted allegations and evidence from as early as 2014. Therefore, the ALJ's the ALJ's discounting of Plaintiff's migraine symptom testimony is not supported by substantial evidence.

### A. Remand For Further Administrative Proceedings

The Court finds the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, to support the finding Plaintiff was not disabled from May 2014 through at least the date last insured. Remand for further administrative proceedings, rather than an award of benefits, is warranted here, as further administrative review could remedy the ALJ's error. See Brown-Hunter, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). As it is unclear whether Plaintiff is in fact disabled, remand is on an "open record." Id. at 496 ("We may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" (quoting Garrison, 759 F.3d at 1021)).

E.  **Plaintiff's Remaining Arguments**

Given that remand is warranted, the Court declines to address Plaintiff's remaining arguments regarding further symptom testimony and the RFC.  Those issues, if necessary, may be addressed on remand.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

V.    **CONCLUSION**

The decision of the Commissioner denying benefits is hereby reversed and the matter is remanded for further proceedings consistent with this Order.  Judgment shall be entered accordingly.

DATED:  September 24, 2025

                                    /s/ Autumn D. Spaeth
                            THE HONORABLE AUTUMN D. SPAETH
                            United States Magistrate Judge